# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

**CRAIG MYLES,**                                    \*
**Individually and as Parent and Next**
**Friend of K.M. and A.M., minors,**                \*

    **Plaintiffs**                            \*

    **v.**                                    \*        **CIVIL NO. JKB-15-300**

**RENT-A-CENTER, INC.,** *et al.*,                  \*

    **Defendants**                            \*

   \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM AND ORDER

Craig Myles ("Mr. Myles") brought an action on behalf of himself and his minor children (collectively, "Plaintiffs") in the Circuit Court for Baltimore County, Maryland, accusing Rent-A-Center, Inc., and Rent-A-Center East, Inc. (together, "Defendants") of negligence, breach of warranty, violation of the Maryland Consumer Protection Act, and common-law fraud. Plaintiffs' claims arise from a rental-purchase agreement that Mr. Myles executed at a Towson, Maryland, Rent-A-Center store:   Plaintiffs allege that (1) Mr. Myles leased an ostensibly merchantable couch at the store but (2) the couch was in fact infested with bed bugs and (3) the infestation spread into Plaintiffs' apartment, causing them physical and emotional distress.   On February 3, 2015, Defendants removed the action to this Court on diversity grounds (ECF No. 1);[1] on July 7, 2015, the Court denied Defendants' Motion to Dismiss (ECF No. 19), and the

---

[1] *See* 28 U.S.C. § 1332(a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between—(1) citizens of different States[.]"); § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.").

parties proceeded to discovery on Plaintiffs' claims.  Discovery closed on April 21, 2016.  (*See* ECF No. 61.)

Now pending before the Court are five procedural motions[2]:  Plaintiffs' Motion to Undo Confidentiality (ECF No. 71); Plaintiffs' Motion for Leave to File Amended Complaint ("Motion to Amend") (ECF No. 72); Defendants' April 20, 2016, status report, which the Court has construed as a Motion to Exclude Evidence (*see* ECF Nos. 74 & 75); and Defendants' two Motions for Leave to File Sur-Reply (ECF Nos. 85 & 86).  The issues have been briefed, and no hearing is required, *see* Local Rule 105.6 (D. Md. 2014).  For the reasons explained below, all five pending motions will be DENIED.

## I.   *Plaintiffs' Motion to Undo Confidentiality (ECF No. 71)*

In their Motion to Undo Confidentiality, Plaintiffs challenge the protected designation of (1) documents relating to Defendants' policies, practices, and procedures concerning bed bug prevention and complaint resolution; and (2) records of eighty-three bed bug claims that Defendants received between November 6, 2013, and December 29, 2014.  Plaintiffs contend that these documents should remain confidential only if Defendants can "establish with specificity that disclosure . . . will result in substantial harm to [their] businesses, and that [such] harm outweighs both the necessity of the material to dispositive motions practice . . . and the traditional right to public access of judicial documents and records."  (ECF No. 71–1 at 5.) Notably absent from Plaintiffs' brief in support of their motion is any explanation as to how the current confidentiality designation—pursuant to the Consent Confidentiality Order ("CCO")

---

[2] Also pending—but not yet ripe for adjudication—are Plaintiffs' Motion for Partial Summary Judgment (ECF No. 88) and Defendants' Motion for Summary Judgment (ECF No. 89).  The Court will address these dispositive motions in due course, after they are fully briefed.  Nothing in the instant Memorandum and Order should be taken as reflecting the Court's assessment of the merits of the pending summary-judgment motions or any arguments presented therein.

entered on December 23, 2015, following robust motions practice and a December 14, 2015, hearing—compromises Plaintiffs' ability to litigate their claims or otherwise prejudices them.

Plaintiffs' invocation of the "traditional right to public access of judicial documents and records" struck the Court as oddly familiar.  Curious, the Court reviewed the audio recording of the December 14 hearing.  During that hearing, Plaintiffs' counsel proffered that if materials adduced in discovery became "necessary to respond to a motion for summary judgment," he should be permitted to "use that information without submitting it under seal because there is a First Amendment issue . . . about public access to court filings."  (Motions Hearing at 13:14:56, *Myles v. Rent-A-Center, Inc.*, Civ. No. JKB-15-300 (December 14, 2015) [hereinafter "Motions Hearing"].)  Counsel added that he does not "believe it's appropriate to litigate in secret."  (*Id.* at 13:17:25.)  These statements, made in open court, parallel contentions counsel raised in his November 2, 2015, response in opposition to Defendants' request for a confidentiality order:  he wrote that "the public has a presumptive right of access to material filed with the court" and that if Defendants' "policies, practices and procedures are deficient, they should be subjected to public scrutiny."  (ECF No. 36 at 7-8.)  The Court considered these points in reaching its determination as to the appropriate scope both of discovery and of the CCO that the Court ultimately entered.  That CCO represents a deliberate balance that the Court struck in this case: the Court required Defendants to produce substantial, potentially proprietary, material for Plaintiffs' inspection, on condition that such material would be used only for purposes of this litigation and would be filed under seal.  The Court enforced this balance in Plaintiffs' favor in a February 19, 2016, Order, in which it directed defense counsel to produce "*any* content from Defendants' internal network that is responsive to the Court's [Discovery] Orders," as well as "*any* documents, e-mails, or customer correspondence files that have been retained by

Defendants and that concern prior bedbug claims or the terms of resolution of such claims."
(ECF No. 61 at 1 (emphases added).)  The Court reminded counsel in that February 19 Order
that all confidential documents would be produced subject to the terms and conditions of the
CCO (*id.* at 1-2):  defense counsel presumably relied on that caveat in complying with his
discovery obligations.

Yet the Court did not leave Plaintiffs without an avenue to challenge confidentiality
going forward.  Rather, the Court provided express guidance to inform any such challenge:

> THE COURT:  Plaintiff[s] [are] going to receive from Defendants the information
> relating to claims within the scope that I originally defined . . . .  Defendant[s] . . .
> [are] free to redact names, addresses, and telephone numbers, but otherwise
> ha[ve] to turn over the information that Plaintiff[s] ha[ve] requested—the
> complete universe of [relevant] material . . . .  Then, Plaintiff[s] ha[ve] a request
> for what are, essentially, internal documents . . . .  What I think I hear Defendants
> saying is that they are not resisting discovery with respect to that information . . .
> but they insist on a protective order that holds these procedures . . . in confidence,
> and requires that whatever information is produced be carefully supervised by
> Plaintiffs' counsel and, ultimately, returned to Defendants when the litigation has
> been completed. . . . That is how we will proceed at the next step . . . .  Then
> [Plaintiffs' counsel], once that discovery has been completed, and you've got the
> information . . . you're free to come back to the Court and say, "I have a
> *particularized need* to undo the confidentiality order with respect to this
> *particular document*, procedure, policy, et cetera.  And here's why."  And if your
> position is going to be, "I don't like to litigate in secret," well, that's fine, you can
> submit that.  *That's probably not going to go too far.*  If it's, listen, this is *limiting
> my ability* to do X, Y, and Z in relation to the representation of this client in this
> case and is *frustrating my ability to get to the truth* of what happened here, that
> might engender more sympathy.

(Motions Hearing at 13:21:25 (emphases added).)  The Court repeated this guidance in its Order
of December 14, 2015, writing that "should [Plaintiffs' counsel] encounter a particularized need
to undo confidentiality with respect to a specific item of discovery, he may file an appropriate
motion with the Court."  (ECF No. 46 at 2.)  Yet far from describing a *particularized need* to
undo confidentiality with respect to any *particular document*, Plaintiffs have posed a generalized
request grounded in the very argument that the Court previously found unpersuasive on the facts

of this case.  While Plaintiffs correctly observe that, under the terms of the CCO and, for that matter, Local Rule 104.13 (D. Md. 2014), Defendants bear the burden of justifying confidentiality in a properly raised challenge, Plaintiffs bear the burden in the first instance of framing such a challenge:  they plainly have not done so here.  *See Allstate Ins. Co. v. Warns*, Civ. No. CCB-11-1846, 2012 WL 681792, at \*17 n.8 (D. Md. Feb. 29, 2012) ("[U]nder the form of protective order approved in this District, a party who has signed the order can nonetheless challenge the confidential designation *as to any particular document*, in which case the party seeking continued protection retains the burden of justifying the seal." (emphasis added)).

Moreover, even were the Court inclined to overlook Plaintiffs' noncompliance with the Court's straightforward instructions (it is not), the Court could not feasibly assess the merits of Plaintiffs' Motion to Undo Confidentiality because neither party has placed the relevant policy, practice, and procedural documents before the Court.  Plaintiffs appended to their motion a spreadsheet that appears to summarize the bed bug claim files, and they included a report drafted by their expert that describes some of the procedural documents, but they did not append the subject documents themselves.  The Court will not upend the parties' settled expectations regarding confidentiality without so much as reviewing the documents that could be affected by such judicial intervention.

One final point bears consideration.  In their reply brief, Plaintiffs insist that "[m]embers of the public who shop at [Defendants' stores] or who may consider acquiring used furniture from [Defendants] have an interest in the [subject] documents," as do "landlords whose apartments become infested by used . . . furniture." (ECF No. 84 at 2-3.)  Perhaps so,[3] and if a

---

[3] However, the Court is not convinced that publication of the subject documents would significantly advance the public interest.  The claims spreadsheet simply reflects customer complaints received and processed during the relevant time period; it does not conclusively establish whether the complained-of infestations were in fact traceable to Defendants' furniture.  As for the policy documents (which the Court has yet to review), it is unclear how

member of the public or the news media were to move to intervene in this matter or seek disclosure of sealed or redacted records, the Court would take appropriate action at that time.[4] But it is improper for Plaintiffs to wield the "public interest" as a mechanism to unravel a confidentiality agreement to which Plaintiffs assented.  Courts have rejected similar attempts by litigants to circumvent their confidentiality obligations on public-access grounds.  *See, e.g.*, *Pittston Co. v. United States*, 368 F.3d 385, 406 (4th Cir. 2004) (concluding that district court did not abuse its discretion in refusing to unseal documents that were sealed pursuant to a stipulated protective order; distinguishing an earlier case in which a newspaper-intervenor sought to obtain sealed documents; and noting that the plaintiff already enjoyed access to the subject documents and had agreed to the protective order); *Longman v. Food Lion, Inc.*, 186 F.R.D. 331, 333 (M.D.N.C. 1999) (explaining that it is "particularly appropriate" to require plaintiffs to show good cause as to why a confidentiality order should be modified or stricken where plaintiffs "stipulated to the terms of the protective order and [d]efendants relied on that protection"); *see also Jochims v. Isuzu Motors, Ltd.*, 145 F.R.D. 499, 501, 503 (S.D. Iowa 1992) ("[T]here is general unanimity among the courts that where a party to [a] stipulated protective order seeks to

---

publication of Defendants' internal policies and procedures would significantly enhance public welfare.  In any event, the cases on which Plaintiffs rely in support of their public-health argument are factually distinguishable, as the documents at issue in those cases were more directly relevant to public-health concerns or otherwise of substantial public interest.  *See In re Benicar (Olmesarten) Prods. Liab. Litig.*, No. 15-2606 (RBK/JS), 2016 WL 266353, at *5, *7 (D.N.J. Jan. 21, 2016) (records documented alleged adverse side effects associated with widely distributed prescription drugs); *Ohio Valley Envtl. Coal. v. Elk Run Coal Co.*, 291 F.R.D. 114, 116 (S.D. W. Va. Apr. 11, 2013) (records documented the presence of various contaminants, including selenium, in public waters); *Allied Corp. v. Jim Walter Corp.*, Civ. A. No. 86-3086, 1996 WL 346980, at *6 (E.D. Pa. June 17, 1996) (proposed discovery could enhance the public's knowledge about the health risks associated with asbestos products); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, MDL No. 1014, 1995 WL 764580, at *3 (E.D. Pa. Dec. 14, 1995) (information "directly relate[d] to public health and safety" as it was responsive to an FDA notice of proposed rulemaking concerning reclassification of certain spinal devices).

[4] Plaintiffs complain that "[b]ecause the disputed materials were produced subject to the protective order, the public is not aware of their existence."  (ECF No. 84 at 2.)  But Plaintiffs seem to have overlooked that the bulk of the material appearing on the Court's docket—including the Complaint and the Answer; the Court's Memorandum and Order denying Defendants' Motion to Dismiss; the motions and exhibits relating to Defendants' request for a confidentiality order; and, indeed, both of the pending summary-judgment motions with their respective exhibits—is unsealed and publicly available.  Any discerning member of the public who is tracking this litigation is undoubtedly aware that Rent-A-Center has been accused of dealing in infested merchandise.

modify that protective order, that party must demonstrate particular good cause in order to gain relief from the agreed[-]to protective order. . . . To permit [the plaintiff] to conduct discovery under one set of rules and then have the court abrogate those rules after [the plaintiff] has achieved his desired result would be to countenance discovery by ambush."); *cf. United States v. Morgan*, 962 F.2d 8, 1992 WL 102573, at *3 (4th Cir. 1992) (unpublished table decision) ("Where the motion [to unseal] is brought by a party that has had a full opportunity to litigate the initial imposition of the seal, the appropriate threshold question is whether or not that party has shown a change in circumstances sufficient to warrant a reconsideration of the seal."). The Court finds the analysis in these cases persuasive, and it extends that analysis here.

Plaintiffs have failed to identify their particularized need to undo confidentiality with respect to any particular document(s), and Plaintiffs' generalized public-interest argument is improper given their execution of the CCO and Defendants' reliance thereon. Plaintiffs' Motion to Undo Confidentiality will be DENIED.[5]

## II.   *Plaintiffs' Motion to Amend (ECF No. 72)*

In their Motion to Amend, Plaintiffs propose to add a prayer for punitive damages to their existing negligence count, citing *Owens-Illinois, Inc. v. Zenobia*, 601 A.2d 633 (Md. 1992), for the proposition that punitive damages may be recoverable in negligence cases if the defendant acted with a sufficiently culpable mental state (*i.e.*, with actual malice). As authority for their motion, Plaintiffs rely on Rule 15(a)(2) of the Federal Rules of Civil Procedure, which instructs

---

[5] In so ruling, however, the Court also DENIES Defendants' Motion for Leave to File Sur-Reply (ECF No. 85). Surreply memoranda are disfavored in this District, *see Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 679 (D. Md. 2013); *see also* Local Rule 105.2.a (D. Md. 2014) ("Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed."). The Court *may* grant leave to file a surreply "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004) (per curiam). Here, however, Defendants' proposed surreply is not directed to any contentions appearing for the first time in Plaintiffs' reply brief; instead, Defendants advance a novel argument (related to the public-interest discussion in Plaintiffs' opening brief) that bed bugs actually pose no public-health hazard. Whatever the merits of that surprising contention, Defendants could have raised it in their opposition brief, and the Court declines to consider it now.

courts to "freely give leave" to amend when "justice so requires."  *See also Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980) ("In the absence of any apparent or declared reason [for denial] such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.[,] the leave sought should, as the rules require, be 'freely given.'" (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962))).  In their opposition brief, Defendants contend that (1) the proposed punitive-damages allegation is untimely and (2) the amendment would be futile.  Because the Court agrees that the proposed allegation is untimely, it need not separately resolve the question of futility.[6]

While Rule 15(a)(2) reflects a federal policy in favor of granting *timely* requests to amend, Plaintiffs' motion—filed over six months after the September 21, 2015, deadline for joinder of additional parties and amendment of pleadings (*see* ECF No. 28 at 2)—implicates another standard.  Under Rule 16(b)(4), dates established in a scheduling order will be modified only upon a showing of "good cause."   Good cause exists where "the moving party has

---

[6] That being said, the Court is skeptical whether Plaintiffs have a credible case for actual malice.  The bar for such a claim is quite high:  as the *Owens-Illinois* court explained,

> in products liability cases the equivalent of the "evil motive," "intent to defraud," or "intent to injure," which generally characterizes "actual malice," is actual knowledge of the defect and deliberate disregard of the consequences.  Therefore, in order for actual malice to be found in a products liability case . . . the plaintiff must prove (1) actual knowledge of the defect on the part of the defendant, and (2) the defendant's conscious or deliberate disregard of the foreseeable harm resulting from the defect.

601 A.2d 633, 653 (Md. 1992).  Plaintiffs are quick to point out that (1) actual knowledge includes the "willful refusal to know," *id.* at 654 n.23; and (2) the relevant consideration on this motion is the "legal sufficiency of the allegations, not whether [Defendants] ha[ve] a basis for a . . . motion for summary judgment."  (ECF No. 82 at 2-3.)  True enough, motions to amend are generally assessed much like motions to dismiss, with the Court taking as true the plaintiff's well-pleaded allegations to determine whether the plaintiff has stated a claim.  *See Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).  But the circumstances surrounding *this* Motion to Amend are somewhat unusual, in that discovery has already closed and both parties have filed summary-judgment motions.  Indeed, Defendants appended to their opposition brief several transcripts of depositions in which Rent-A-Center employees flatly denied that they would ever rent an infested item of furniture to a customer.  Defendants also appended a portion of testimony by *Plaintiffs'* expert entomologist, who opined that Defendants' "policies and procedures" evince "efforts to deliver pest free furniture." (ECF No. 83–3 at 4.)  Perhaps tellingly, Plaintiffs presented no evidence in reply tending to counter any of this testimony.  While Plaintiffs' punitive-damages allegation (if it were timely and otherwise properly presented) might have survived a conventional Rule 12(b)(6) analysis, the Court sees no reason to don judicial blinders and disregard the state of the record as it now exists.

'diligently made efforts to meet court imposed deadlines.'" *Okoro v. Ocwen Loan Servicing, LLC*, Civ. No. 15-3370-JMC, 2016 WL 1721183, at *1 (D. Md. Apr. 29, 2016) (quoting *Tawwaab v. Va. Linen Serv., Inc.*, 729 F. Supp. 2d 757, 768 (D. Md. 2010)); *see also United States ex rel. Chasney & Co. v. Hartford Accident & Indem. Co.*, Civ. No. JKB-14-2148, 2016 WL 386218, at *5 (D. Md. Feb. 2, 2016) ("Because a court's scheduling order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril, a movant must demonstrate that the reasons for the tardiness of his motion justify a departure from the rules set by the court in its scheduling order." (internal quotation marks omitted) (quoting *Odyssey Travel Ctr., Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 632 (D. Md. 2003))).  The burden for demonstrating good cause rests on the moving party, *Firemen's Ins. Co. of Wash. D.C. v. Glen-Tree Invs., LLC*, No. 7:11-CV-59-D, 2012 WL 4191383, at *3 (E.D.N.C. Sept. 19, 2012), and the "focus of the inquiry is upon the moving party's reasons for seeking modification. *If that party was not diligent, the inquiry should end*," *Odyssey Travel Ctr., Inc.*, 262 F. Supp. 2d at 632 (quoting *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D. W. Va. 1995)).

Plaintiffs here have tendered no explanation for their tardy motion.  On the contrary, they contend that their prayer for relief is "justified by the allegations of the original Complaint." (ECF No. 72 at 3.)  The mental state required to prove common-law fraud is indeed similar (though not identical) to the mental state required to prove actual malice, and the Court is forced to wonder why—if Plaintiffs believed in good faith that they had a credible fraud claim— Plaintiffs failed to plead punitive damages for negligence in the first instance.  Perhaps Plaintiffs' counsel simply overlooked this potential avenue for redress—but if so, "[c]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief," *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D. Md. 1999).  Alternatively,

perhaps Plaintiffs' counsel does have some legitimate excuse for his tardiness—but if so, he has made no effort to articulate it.  The Court will not undertake an exercise in rank speculation when Rule 16(b)(4) requires the movant to demonstrate good cause.

Plaintiffs' Motion to Amend will be DENIED.[7]

### III.  *Defendants' Motion to Exclude Evidence (ECF No. 74)*

Finally, in their Motion to Exclude Evidence, Defendants alert the Court to Plaintiffs' untimely production of a video clip, recorded by Mr. Myles on his smartphone and purportedly depicting the subject couch.  Although Plaintiffs represented in a September 28, 2015, response to Defendants' interrogatories that they had produced "[a]ll photographs, videos, plats or diagrams of the scene, or objects connected with the allegations of the Complaint" (ECF No. 74 at 1), Plaintiffs' counsel now acknowledges that he inadvertently omitted the smartphone video file from his earlier production (ECF No. 81 at 2).  Not surprisingly, defense counsel urges the Court to exclude the video from evidence should this case move into a trial posture.

Pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure, if a party fails to produce discoverable information, that party is barred from using such information on a motion or at trial "unless the failure was substantially justified or is harmless."  Plaintiffs' counsel does not contend that his error was substantially justified; however, he insists that the error is harmless as that term has been construed by the United States Court of Appeals for the Fourth Circuit.  In *Southern States Rack & Fixture, Inc. v. Sherwin–Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003), the court outlined five factors that district courts should consider when determining whether to exclude improperly disclosed evidence:

---

[7] Having denied Plaintiffs' Motion to Amend, the Court also DENIES Defendants' related Motion for Leave to File Sur-Reply (ECF No. 86).  As noted above, surreply memoranda are disfavored in this District, *see Chubb & Son*, 919 F. Supp. 2d at 679.  The Court has reviewed Defendants' proposed surreply and has determined that it would neither alter nor inform the Court's analysis.

(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

In this case, each of the five *Southern States* factors weighs in Plaintiffs' favor and leads the Court to conclude that Plaintiffs' untimely disclosure of the smartphone video was harmless. As to the first factor (*i.e.*, surprise), Defendants cannot plausibly contend that the late disclosure surprised them:  Plaintiffs timely produced photographic evidence depicting the infested couch (*see* ECF No. 81–7), and Mr. Myles specifically referenced the smartphone video in his January 19, 2016 deposition (which deposition was completed roughly three months before Defendants filed their Motion to Exclude Evidence) (*see* ECF No. 81–2 at 6).  As to the second factor (*i.e.*, cure), Plaintiffs have proposed a reasonable remedy far less draconian than exclusion:  if, as defense counsel represents in his papers, he wishes to have the smartphone and/or video file inspected by experts, counsel may file a motion to reopen discovery for that limited purpose. The Court anticipates that it would grant such a motion, provided that counsel's proposal is sufficiently detailed as to the scope and timeframe of the proposed investigation.[8]  The third factor (*i.e.*, disruption at trial) has no bearing here, as no trial date has been fixed; the fourth factor (*i.e.*, importance of the evidence) cuts in Plaintiffs' favor, as video evidence can be highly probative and helpful to a jury.[9]  And as for the fifth factor (*i.e.*, explanation), there is no

---

[8] Defense counsel complains that Defendants' "entire defense strategy, including its strategy at mediation, may well have been entirely different had the plaintiffs not withheld the video."  (ECF No. 87 at 2.)  The Court finds this assertion dubious:  had Defendants' strategy turned on so fine a point as the availability of a smartphone video file, the Court suspects that defense counsel would have reacted quickly and decisively in response to Mr. Myles's reference to the video during his deposition.

[9] To be clear, the Court is in no position to determine at this stage whether the video is in *fact* admissible at trial. Defense counsel is welcome to articulate any good-faith challenges to the admissibility of the video (or any other evidence) in a properly filed motion *in limine*, should one or more of Plaintiffs' claims survive summary judgment.

indication that Plaintiffs' counsel intentionally withheld the video file, nor has defense counsel adduced any evidence tending to suggest nefarious intent.[10]

The Rule 37(c)(1) harmlessness inquiry was designed precisely for scenarios like this one, where a party inadvertently neglects to timely produce germane evidence but where subsequent remedial measures shield the opposing party from undue prejudice. However, even were the question close, the Court would still deny Defendants' Motion to Exclude Evidence because defense counsel did not abide by Local Rule 104.7 (D. Md. 2014). Specifically, he did not confer with Plaintiffs' counsel before filing his motion with the Court, nor did he append to his motion a certificate detailing his unsuccessful attempts to hold such a conference. The Court is not inclined to award discretionary relief to a party who complains about procedural violations where the complainant himself fails to comply with the Local Rules. *Cf. Brethren Mut. Ins. Co. v. Sears, Roebuck & Co.*, Civ. No. WDQ-12-0753, 2014 WL 3428931, at *4 (D. Md. July 10, 2014) (denying defendants' motion for Rule 37 sanctions where defendants had "not filed the required certification or described any attempts to confer with [plaintiff]").

Defendants' Motion to Exclude Evidence will be DENIED.

## ORDER

For the foregoing reasons, it is ORDERED:

1. Plaintiffs' Motion to Undo Confidentiality (ECF No. 71) is DENIED, and the Consent Confidentiality Order (ECF No. 50) shall remain in full force and effect;

2. Plaintiffs' Motion to Amend (ECF No. 72) is DENIED;

---

[10] Notably, the two cases on which defense counsel relies are readily distinguishable from the case at bar. In *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 269 F.R.D. 497, 500 (D. Md. Sept. 9, 2010), Judge Grimm of this District (then sitting as a United States Magistrate Judge) recommended stiff sanctions against a litigant who pervasively violated Orders of the Court concerning the preservation of electronically stored information. In *Jones v. Bremen High School District 228*, No. 08 C 3548, 2010 WL 2106640, at *9-10 (N.D. Ill. May 25, 2010), United States Magistrate Judge Susan Cox likewise recommended sanctions in a case involving spoliation of evidence. In this case, by contrast, there is no indication (at least in the papers pending before the Court) that Plaintiffs have willfully violated Court Orders or tampered with any evidence: as best the Court can tell, Plaintiffs' counsel simply made a mistake.

3.  Defendants' Motion to Exclude Evidence (ECF No. 74) is DENIED; and

4.  Defendants' Motions for Leave to File Sur-Reply (ECF Nos. 85 & 86) are DENIED.


DATED this 31st day of May, 2016.


                                        BY THE COURT:


                                        _____/s/_____
                                        James K. Bredar
                                        United States District Judge